IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MIDLAND NATIONAL LIFE INSURANCE COMPANY, | ) Civil No.: 3:11-cv-00957-JE ) ) |
| Plaintiff, | ) FINDINGS AND ) RECOMMENDATION |
| v. | ) ) |
| DEBRA K. LACHELN, formerly known as DEBRA KIM PAINTER, AMY EILEEN PAINTER, and THE ESTATE OF RALPH ARTHUR PAINTER | ) ) ) ) ) |
| Defendants. | ) ) |

Joseph Hasman
Chittenden Murday & Novotny, LLC
303 W. Madison St., Suite 1400
Chicago, IL 60606

Medora Marisseau
Karr Tuttle Campbell
1201 3rd Avenue, Suite 2900
Seattle, WA  98101

    Attorneys for Plaintiff

Michael J. Knapp
621 SW Morrison St. Suite 900
Portland, OR 97205

    Attorney for Defendant Debra Lacheln

FINDINGS AND RECOMMENDATION – 1

Michael R. Seidl
Seidl Law Office, PC
121 SW Morrison Street, Suite 475
Portland, OR 97204

    Attorney for Defendants Amy Eileen Painter
    and the Estate of Ralph Arthur Painter

JELDERKS, Magistrate Judge:

Plaintiff Midland National Life Insurance Company ("Midland") brings this interpleader action against Defendants Debra Lacheln, Amy Eileen Painter and The Estate of Ralph Arthur Painter ("Estate"). Pending before the court are Defendants' cross-motions for summary judgment and the Estate's motion to strike.

For the reasons set out below, Defendant Lacheln's motion for summary judgment should be denied and Defendant Estate's motion for summary judgment should be granted. Defendant Estate's motion to strike is denied.

## **Factual Background**

Midland's Complaint and Defendants' memoranda allege the following facts.

Plaintiff Midland issued a term life insurance policy ("the Midland policy") with a face amount of $250,000 to Ralph Arthur Painter ("Chief Painter") in October of 1997 naming Chief Painter as the insured and Defendant Debra Lacheln (then Debra Painter) as the primary beneficiary. Chief Painter was the Chief of Police for the City of Rainier, Oregon.

In 2005, Chief Painter's divorce attorney, David Herr, and Lacheln's divorce attorney, David Corden, negotiated and drafted a stipulated divorce settlement on behalf of their respective clients which was made final by a Stipulated General Judgment of Dissolution ("Judgment")

approved by the Columbia County Circuit Court on July 21, 2005. The Judgment provides in paragraph 4 that Chief Painter was obligated to pay spousal support to Lacheln in the amount of $1000 per month for 96 months, followed by $500 per month for 48 months, for a total obligation of $120,000 over a 12-year period. Pursuant to paragraph 4.2, Chief Painter's obligation to make these monthly payments terminated "on Husband's death."

In addition, at paragraph 1.3, the Judgment contains a provision that

> [e]xcept as otherwise provided here, any designation of the now former spouse as a beneficiary of any benefit, including but not limited to . . . life insurance policies, . . . in which a party is able to designate a beneficiary to receive the proceeds of that asset on the death of that party, which was in place on or before the date of this judgment, is deemed to have been revoked. The benefit will be paid to the secondary or contingent beneficiary or, if no beneficiary is named, then to the decedent's estate. The surviving former spouse will cooperate with the decedent's estate in assuring this directive is completed, specifically including the affirmative responsibility to disclaim, in writing, and within nine months of the date of death, to assure that the surviving former spouse does not receive any benefit as a result of the decedent's failure to modify the beneficiary designation of the above described assets.

The Judgment also provides at paragraphs 4.5 and 4.5.1 that:

> As additional spousal support, Husband will maintain an insurance policy insuring his life in an amount not less than the outstanding balance owed on his spousal support obligation as defined in paragraph 4 above naming Wife as the primary beneficiary.
>
> The obligation to maintain this insurance will continue as long as Husband must pay spousal support as decreed by the court or an arrearage exists for accrued but unpaid support.

Chief Painter died intestate on January 5, 2011 and Plaintiff Midland became liable to pay death benefits under the policy in the amount of $250,000. Defendant Amy Painter, who was married to Chief Painter at the time of his death, is the court appointed administrator of Chief Painter's Estate. It is undisputed that Chief Painter never changed his beneficiary

FINDINGS AND RECOMMENDATION – 3

designation for the Midland policy and that Defendant Lacheln remained the named beneficiary at the time of Chief Painter's death. Following Chief Painter's death, Defendant Lacheln made claim to the policy's death benefit. There is no contingent beneficiary named in the policy; therefore, Chief Painter's Estate is the default contingent beneficiary under the terms of the policy. The Estate also made claim to the death benefit and Plaintiff Midland responded to the parties' competing claims by filing the present interpleader action. Midland has tendered the death benefit of Chief Painter's life insurance policy to the court and seeks protection from further liability for death benefits or otherwise under Chief Painter's policy to any person or entity claiming on or behalf of or through any of the defendants.

In her motion for summary judgment, Defendant Lacheln seeks an order that disburses to her the full death benefit from the Midland policy.

In its cross motion, Defendant Estate seeks an order disbursing the Midland policy death benefit as follows: 1) $52,000 – the amount of spousal support that was remaining to be paid at the time of Chief Painter's death –to Defendant Lacheln; 2) the balance of the benefit to the Estate. Defendant Estate also moves to strike the Declarations of Debra Lacheln, Jennifer Leroy and Jeremy Howell, filed by Defendant Lacheln in support of her motion for summary judgment.

## Discussion

I. **Motion to Strike**

Defendant Estate moves to strike, as containing inadmissible hearsay each of three Declarations submitted by Defendant Lacheln in support of her motion for summary judgment.

The Declarations by Defendant Lacheln and two of her adult children, Jennifer Leroy and Jeremy Howell, each relate the declarants' purported conversations with Chief Painter after the

FINDINGS AND RECOMMENDATION – 4

Judgment was entered regarding the Midland policy and Chief Painter's intentions as to how the benefit should be distributed in the event of his death. The alleged conversations suggest that Chief Painter intended to keep Defendant Lacheln as the "full beneficiary" of the entire death benefit of the Midland policy because he was concerned about her "difficult financial situation following [the] divorce."

Defendant Lacheln argues that the statements allegedly made by Chief Painter are not hearsay because he, through his estate, is a party to this interpleader action. She contends that under FRE 801(d)(2), statements made by a decedent to witnesses prior to his death are not hearsay when the decedent's estate is a party to the lawsuit.

Defendant Estate argues that this declaration testimony concerning out-of-court statements by a now-deceased person is inherently unreliable and should be stricken as inadmissible hearsay evidence. Defendant Estate draws a distinction between cases where the claim and the subsequent monetary award flow from a cause of action arising prior to the decedent's death and a case, such as this one, where the monetary award owing to the estate results from a direct contractual right belonging only to the estate. It argues that in the former case, Chief Painter's statements may be admissible, but in the latter they are not.

I am neither convinced that FRE 801(d)(2) creates a sweeping inclusion of decedents' statements when the decedent's estate is a party to a suit as Defendant Lacheln contends nor persuaded by Defendant Estate that there is support in either the statute or in case law for the distinction which it argues precludes such statements. However, I conclude that admission of the statements will create a more complete record for further review. I also conclude, as discussed below, that the statements, even accepted as true, are irrelevant to the determination of either

FINDINGS AND RECOMMENDATION – 5

Defendant's motion for summary judgment. I, therefore, deny Defendant Estate's motion to strike.

## II. Motions for Summary Judgment

A. Standards

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. Id. When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. Id. at 324.

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. Id. at 630-31. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985). No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

While each party bears distinct burdens in support of and in opposition to the cross-motions at issue, the parties' motions and their arguments are intertwined and will be addressed together.

B.  <u>The Parties' Arguments</u>

Both Defendant Lacheln's Motion and her Response to Defendant Estate's Motion are based on several interrelated arguments.  First, she argues that Lacheln is and has always been the named beneficiary of the Midland policy.  Second, following the parties' divorce, Chief Painter decided to maintain the Midland policy to satisfy the life insurance requirement of the Judgment, made no changes to the named beneficiary of that policy and nothing in the Judgment prevented Chief Painter from deciding to continue Lacheln as the sole beneficiary.  Third, the "not less than" language in paragraph 4.5 of the Judgment sets a floor and not a ceiling on the policy amount that Chief Painter had to maintain.  Nothing, Defendant Lacheln argues, prevented him from providing her a death benefit larger than his outstanding support obligation to her and it was, in fact, Chief Painter's intent to do so.  Finally, Defendant Lacheln argues that the "except as otherwise provided here" language of paragraph 1.3 of the Judgment means that she gave up her status as the designated beneficiary of Chief Painter's life insurance policies except for those "otherwise provided" for in the provisions of paragraph 4.5.  Thus, the Midland life insurance policy is completely excepted from the terms of paragraph 1.3 because it is "otherwise provided" for.

Defendant Estate asks the court to construe the Judgment to mean, as a matter of law, that the Estate is the beneficiary of the Midland policy subject to a limited exception that Lacheln is a beneficiary as to that portion of the benefit representing unpaid spousal support.  Defendant Estate contends that the original designation of Lacheln as the primary beneficiary of the Midland policy was revoked by paragraph 1.3 of the Judgment and that the Estate is entitled to that construction as a matter of law pursuant to ORS 107.121.  Section 1 of ORS 107.121 states that "[a] judgment of dissolution, separation or annulment may revoke a designation of

FINDINGS AND RECOMMENDATION – 7

beneficiary made by a principal in favor of a spouse or a relative of the spouse if the designation of beneficiary is revocable as described in subsection (2) of this section." ORS 107.121(1). Section 4 states, in pertinent part, that "the revocation of a designation of beneficiary under this section becomes effective upon the entry of the judgment." ORS 107.121(4)

Defendant Estate contends that, pursuant to the language of paragraph 1.3, upon the revocation of Lacheln as the primary beneficiary, in the absence of a named contingent beneficiary, the proceeds were payable to the decedent's estate. Therefore, because no contingent beneficiary was named in the Midland policy, the policy proceeds were payable to the Estate upon Chief Painter's death.

Defendant Estate argues that the revocation articulated in paragraph 1.3 was subject only to the exception provided by paragraph 4.5. Paragraph 4.5 granted Lacheln a right to receive "additional spousal support" as a primary beneficiary under an insurance policy insuring Chief Painter's life in an amount not less than the outstanding balance owed on his spousal support obligation. The Estate points out that this requirement was described as "additional spousal support" because Chief Painter's obligation to make monthly spousal support payments as defined in paragraph 4 of the Judgment terminated upon his death. Defendant Estate also contends that the term "in an amount not less than" was used in paragraph 4.5 because the outstanding amount of Chief Painter's support obligation would change over time and this language "set the amount of insurance at the actual amount of unpaid spousal support due upon Chief Painter's death."

Finally, as noted above, Defendant Estate argues that the statements Lacheln and her children describe Chief Painter making after the Judgment was entered regarding his intent that Lacheln receive the entire Midland benefit are inadmissible hearsay. It also argues that even if

FINDINGS AND RECOMMENDATION – 8

the statements are admissible, and even if Chief Painter had the intent described, absent specific overt action, such intent is insufficient to reinstate Lacheln as the sole beneficiary to the entire Midland policy death benefit.

C. Analysis

1. Interpretation of the Judgment and Extrinsic Evidence

The Defendants here agree that paragraphs 1.3 and 4.5 of the Judgment are unambiguous. However, as noted above, they disagree as to the meaning of those unambiguous provisions and have submitted evidence in support of their respective interpretations.

Under Oregon law, courts follow a three-step analysis to interpret a contractual provision. Yogman v. Parrot, 325 Or. 358, 361 (1997). The court first determines the meaning of the provision or provisions in question, within the context of the contract as a whole. In doing so, the court determines, as a matter of law, whether the provision at issue is ambiguous. Id. A contract provision is ambiguous if it is capable of more than one plausible and sensible interpretation. Riverside Homes Inc. v. Murray, 230 Or. App. 292, 304 (2009). If the provision is unambiguous, the analysis ends and the court construes the terms of the contract as a matter of law. Yogman, 325 Or. at 361. If it remains ambiguous, the court may resolve the ambiguity by examining extrinsic evidence of the contracting parties' intent. Id. at 363, see also ORS 41.740.

Oregon law remains unsettled as to whether extrinsic evidence can be used at step one of the Yogman analysis to determine *if* the terms of a contract are ambiguous. Recent decisions from this court have provided a good summary and analysis of the state of the law on this question and support my conclusion that, while the parol evidence rule prohibits the admission of extrinsic evidence in determining whether an ambiguity exists, it is appropriate at the first stage of the Yogman analysis to consider extrinsic evidence concerning the formation of the contract.

FINDINGS AND RECOMMENDATION – 9

See e.g. Malmquist v. OMS Nat. Ins. Co., 2011 WL 3298651 at *1 (D. Or); Fogg v. Wart, 2006 WL 3716745 at *8 (D. Or.); See also Webb v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 207 F.3d 579, 582 (9th Cir.2000)[1]

As discussed below, I have concluded that the language of paragraphs 1.3, 4.5 and 4.5.1 of the Judgment are subject to only one plausible and sensible interpretation and are, therefore, unambiguous. Therefore, I need not and do not consider the extrinsic evidence submitted by either Defendant to resolve the meaning of these terms.

However, I also note that evidence which is properly before the court to illustrate the circumstances of the formation of the Judgment, including Lacheln's deposition testimony, David Corden's Declaration, the communications between the divorce attorneys and the correspondence from Chief Painter to his divorce attorney, supports only the conclusion that the parties agreed to terms requiring Chief Painter to maintain an insurance policy that would provide Lacheln the balance of any unpaid spousal support if Chief Painter were to die before his support obligation ended.

I also conclude that the Declarations of Defendant Lacheln and her children regarding conversations had with Chief Painter may not properly be considered in determining whether there is an ambiguity in the terms of the Judgment. The statements allegedly made by Chief Painter to Lacheln and her children clearly pertain to Chief Painter's intentions *after* the entry of the Judgment and not to the circumstances of its formation. Their relevance as to the issue of Chief Painter's post-judgment intent will be dealt with more fully in the discussion that follows.

---

[1] In addition, ORS §42.220 provides;
   In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting.

FINDINGS AND RECOMMENDATION – 10

2. Paragraph 1.3

Paragraph 1.3 of the Judgment is set forth above. The key language provides that:

[e]xcept as otherwise provided here, any designation of the now former spouse as a beneficiary of any benefit, including but not limited to . . . life insurance policies, . . . which was in place on or before the date of this judgment, is deemed to have been revoked.

Defendant Lacheln asserts that she is and has always been the named beneficiary of the Midland policy, that Chief Painter decided to maintain the Midland policy to satisfy the life insurance requirement of the Judgment, and that he made no changes to the named beneficiary of that policy. The Estate does not dispute these assertions and they present no genuine issues of material fact.

Defendant Lacheln also argues that nothing in the Judgment prevented Chief Painter from deciding to continue Lacheln as the sole beneficiary. Defendant Estate argues that paragraph 1.3 expressly revoked Lacheln's status as the beneficiary to the Midland policy and that pursuant to ORS 107.121(4), that revocation became effective upon entry of the Judgment.

I agree with Defendant Estate that paragraph 1.3 revoked Lacheln's status as beneficiary to the Midland policy (and any other policy that may have been in place on or before the date of the judgment). However, that revocation did not arise from the statute cited by Defendant Estate. When the Judgment at issue here was entered in 2005, ORS 107.121 was not yet in effect. Instead, ORS 107.121 applies only to judgments entered on or after the statute's effective date of January 1, 2006. See Oregon Laws 2005, Ch. 285. Nonetheless, I am satisfied that ORS 107.121 did not operate to change the law as it existed in 2005 but simply clarified the court's authority, established by case law and other statutory provisions, to enforce terms in a dissolution agreement, including those that operate to revoke a designation of a beneficiary. See, e.g. ORS

FINDINGS AND RECOMMENDATION – 11

107.104(1)(b); ORS 107.104(2)[2]; In re Marriage of McInnis, 199 Or. App. 223 (2005) rev. dismissed  338 Or. 681 (terms of marital settlement agreements fully enforceable unless contrary to law or public policy); Prudential Ins. Co. v. Weatherford, 49 Or. App. 835, 837 (1980) citing with approval Beneficial Life Insurance Company v. Stoddard, 95 Idaho 628 (1973) (beneficiary's interest in the policy may be terminated by a property settlement agreement which may reasonably be construed as relinquishment of the spouse's rights to the insurance).  Thus, the Judgment could properly include an enforceable provision for the revocation of a beneficiary and by its own terms render that revocation effective upon the entry of the Judgment.[3]

Under Oregon law, it is the degree of specificity of the relevant terms that determines whether a named beneficiary can recover under an insurance policy after entry of a divorce judgment.  Prudential Ins., 49 Or. App. at 838.  See  also, In re Keller, 232 Or. App. 341 (2009).  Additionally, under Oregon law, a beneficiary's interest in a policy may be terminated by a property settlement agreement "'even though the insured does not remove the former spouse as the beneficiary under the policy.'" Prudential Ins., 49 Or. App. at 837 (quoting Beneficial Life Insurance Co., 95 Idaho at 628).    In Prudential Ins., the court examined a number of relevant cases and concluded that the specificity of the terms is determinative.  The court noted that in cases where the named beneficiary was denied recovery, the agreements at issue contained "language specifically directed to insurance or disclaimers of expectations." Id. at 839-840.  For example, Matter of Estate of McEndaffer, 192 Colo. 431 (1977),  involved a property settlement agreement that specifically awarded the husband the policies insuring his life but required him to

---

[2] It is Oregon's policy "[f]or courts to enforce the terms of settlements . . . to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy."  ORS 107.104(1)(b).
    Under Oregon law, the terms of a stipulated judgment of dissolution may be enforced as (a) contract terms using contract remedies, (b) by imposing any remedy available to enforce a judgment or (c) by any combination of (a) and (b).  ORS 107.104(2).

[3] Paragraph 1 of the dissolution judgment sets forth "The marital status of the parties is hereby terminated. The provisions of this judgment are effective immediately."

FINDINGS AND RECOMMENDATION – 12

maintain a limited amount of life insurance for the former wife's benefit until she reached age 62. Prudential Ins., 49 Or. App. at 839; citing McEndaffer, 192 Colo. at 432-433. The agreement in McEndaffer also provided that the parties waived all claims to property or assets that may be due from the other or the estate of the other. McEndaffer, 192 Colo. at 432. The Oregon Court of Appeals noted, with apparent approval, that McEndaffer ruled that the former wife's recovery should be limited to the amount the dissolution agreement required the husband to maintain for her benefit despite the fact that she remained as the named beneficiary on policies with benefit amounts in excess of that specified for her in the decree. Prudential Ins., 49 Or. App. at 839.

      The property settlement agreement incorporated into the parties' divorce judgment in Prudential Ins. did not expressly address insurance policies. Nor did the agreement include any disclaimers of expectations. In Prudential Ins., the court ultimately concluded that the former spouse had a mere expectancy interest which was not dealt with by the terms of the dissolution agreement and, under the language of the agreement before it, the decedent's former wife was entitled, as the named beneficiary, to the full amount of the decedent's life insurance policy proceeds. However, the distinctions drawn between the language of the settlement agreement at issue there and cases which reached a different result are instructive.

      Here, with language more analogous to McEndaffer than to Prudential Ins., the Judgment specifically addresses life insurance policies and the revocation of the surviving former spouse's interest in those policies. Paragraph 1.3 unambiguously revokes the designation of either former spouse as a beneficiary to "*any* . . . life insurance policies, . . . *which [were] in place on or before the date of this judgment*" (emphasis added). Additionally, paragraph 1.3 requires the surviving former spouse to affirmatively disclaim any interest in those policies "to assure that the surviving

FINDINGS AND RECOMMENDATION – 13

former spouse does not receive any benefit as a result of the decedent's failure to modify the beneficiary designation of the above described assets."

These core directives are modified only by the words "[e]xcept as otherwise provided here . . . ." The only other provisions in the Judgment which deal with the designation of a beneficiary to a life insurance policy are paragraphs 4.5 and 4.5.1. Defendant Lacheln argues that this "otherwise provided for" language completely excepts the Midland policy from the requirements of paragraph 1.3. I disagree. An examination of the plain language of the term within the context of the Judgment as a whole supports only the conclusion that this language merely modified paragraph 1.3's revocation of Lacheln's status as beneficiary to the Midland policy to an extent defined by paragraphs 4.5 and 4.5.1. I now, therefore, will consider the meaning of these subsequent provisions.

3. Paragraphs 4.5 and 4.5.1

As noted above, paragraphs 4.5 and 4.5.1 state that:

As additional spousal support, Husband will maintain an insurance policy insuring his life in an amount not less than the outstanding balance owed on his spousal support obligation as defined in paragraph 4 above naming Wife as the primary beneficiary.

The obligation to maintain this insurance will continue as long as Husband must pay spousal support as decreed by the court or an arrearage exists for accrued but unpaid support.

These paragraphs are preceded by the terms of Chief Painter's spousal support obligation to Lacheln which provide that:

4. Judgment will be entered in favor of Wife and against Husband for spousal support . . . . The amount and duration of the support will be as follows:

$1,000.00 per month for 96 months.

$500.00 per month for 48 months.

FINDINGS AND RECOMMENDATION – 14

Additionally, paragraph 4.2 provides that "[Spousal support] [p]ayments will terminate on Husband's death . . . ."

Defendant Estate argues that these paragraphs deal only with spousal support and that paragraph 4.5 expressly limits Lacheln's ability to benefit from Chief Painter's life insurance policy to an amount characterized as "additional spousal support." This benefit, the Estate argues, was in addition to the spousal support provided by paragraph 4 because it would provide support in place of the monthly payments that would terminate upon Chief Painter's death, pursuant to paragraph 4.2. Defendant Estate argues that the benefit was, therefore, limited, by the amount of the spousal support still owing when Chief Painter died.

Defendant Lacheln argues that the "not less than" language in paragraph 4.5 of the Judgment sets a floor and not a ceiling on the policy amount that Chief Painter had to maintain and nothing prevented him from providing her a death benefit larger than his outstanding support obligation. She also argues that nothing in paragraphs 4.5 or 4.5.1 provides that if Chief Painter did choose to satisfy the life insurance requirement with an existing policy that had a death benefit greater than the amount of his support obligation, she would only be entitled to receive the part of the death benefit equivalent to the amount of Chief Painter's outstanding support obligation.

I agree the "not less than" language of paragraph 4.5 sets a floor and not a ceiling on the policy amount Chief Painter was required to maintain. However, this floor applied only as to any policy that Chief Painter acquired after the entry of the Judgment, and not to the Midland policy at issue here. The provisions of the Judgment must be read together. Because the Midland policy existed before the entry of judgment and because it was also the only policy

maintained that could satisfy Chief Painter's obligation to provide additional spousal support, both paragraphs 1.3 and 4.5 apply.  Paragraph 1.3, therefore, eliminates any entitlement Lacheln had to the Midland policy death benefit and 4.5 reinstates her entitlement as a beneficiary, but only to that portion which represents the unpaid spousal support obligation remaining at the time of Chief Painter's death.

Nothing prevented Chief Painter from providing Lacheln a larger death benefit than his outstanding support obligation .  However, because it expressly revoked Lacheln's status as a beneficiary to *any* benefit which "was in place on or before the date of this judgment," paragraph 1.3 specifically prevented him from doing so with the existing Midland policy without taking some other action, as noted below.  Paragraph 4.5 does grant Lacheln a limited entitlement to a death benefit if Chief Painter died before his support obligation was satisfied.   The Midland policy is the only policy available and thus Defendant Lacheln's entitlement stems from that policy.  However, because of the operation of paragraph 1.3, Defendant Lacheln is entitled to a benefit from the Midland policy equal only to the amount of Chief Painter's outstanding support obligation.

If Chief Painter had intended to provide Lacheln with a greater death benefit, he could have only accomplished this through some affirmative, post-judgment action such as obtaining an additional policy with Lacheln as the named beneficiary, seeking to modify the Judgment or reinstating Lacheln as the sole beneficiary to the Midland policy through the appropriate process.  There is no evidence in the record that Chief Painter took any action of this type.  His alleged oral assertions of his intent as described in the declarations of Lacheln and her children, even if admissible, and even if accepted as true, cannot and do not overcome this absence of affirmative action.  Edwards v. Wolf, 278 Or 255, 262 (1977)(while strict compliance with insurance

company procedure not required, insured must make "at least some attempt" to change a beneficiary); accord Webber v. Olsen, 157 Or. App. 585, 592 (1998) *rev'd on other grounds* 330 Or. 189 (2000). The task before this court is to construe the terms of the Judgment. Therefore, while there may exist an issue of fact as to Chief Painter's post-judgment intentions, the question is not one of material fact and does not affect this court's evaluation of the Defendants' cross motions for summary judgment.

Defendant Lacheln cites a number of cases from other jurisdictions in which courts have concluded that a decedent's former spouse is entitled to the full death benefit of the decedent's life insurance policy even if the death benefit is greater than the balance of the decedent's support obligation at the time of death. These cases are not controlling precedent. However, even if they were, their holdings are based on fact patterns so distinct from those at issue here as to be inapplicable. As noted above, it is the specificity of the language used which determines whether the dissolution settlement precludes recovery by the named beneficiary. That same specificity of language controls the extent of recovery as well.

After a careful analysis of the specific language of paragraphs 1.3, 4.5 and 4.5.1 and of the Judgment as a whole, I conclude that the Judgment at issue here can only be read as operating to revoke Lacheln's status as beneficiary to the Midland policy and to impose upon her the responsibility to affirmatively disclaim her interest in the Midland policy within nine months of Chief Painter's death. Additionally, I conclude that the only plausible meaning of the "except as otherwise provided here" clause in paragraph 1.3 is that the Midland policy is not excepted from that provision, but that instead, a spousal support exception defined by paragraphs 4.5 and 4.5.1 is imposed on an otherwise complete revocation.

FINDINGS AND RECOMMENDATION – 17

Paragraphs 4.5 and 4.5.1, in turn, expressly and unambiguously define Chief Painter's obligation to maintain a life insurance policy as additional spousal support for the benefit of Defendant Lacheln. These paragraphs assure that, in the event Chief Painter died before his obligation had been satisfied through payment of the monthly installments set out in paragraph 4, "additional spousal support" would, in lieu of those remaining monthly payments, satisfy the spousal support obligation still owing.

Accordingly, the Judgment can only properly be interpreted as entitling Defendant Lacheln to that portion of the Midland policy benefit which represents the amount remaining on Chief Painter's spousal support obligation as defined by paragraph 4 of the Judgment. Defendant Estate is, therefore, entitled to the remainder of the benefit.

## Conclusion

Defendant Estate's motion to strike (#44 ) is DENIED. Defendant Estate's motion for summary judgment (#32 ) should be GRANTED and Defendant Lacheln's motion for summary judgment (#34) should be DENIED.

The death benefit on deposit from Midland National Life Insurance Company should be disbursed to Defendant Lacheln in an amount equivalent to the spousal support remaining to be paid at the time of Chief Ralph Painter's death and to the Defendant Estate in an amount equal to the balance of the death benefit. The interest accrued on the deposit should be disbursed to the parties pro rata.

**Scheduling Order**

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due October 22, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 3rd day of October, 2012.

                                                            /s/ John Jelderks
                                                           John Jelderks
                                                           U.S. Magistrate Judge